**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CALLIES PERFORMANCE
PRODUCTS, INC.,

    Plaintiff,                            Case No. 2:09-cv-11258

v.                                        Hon. Lawrence P. Zatkoff

RAM'S MANUFACTURING, INC.,

    Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on July 29, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter comes before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and in the Alternative to Transfer Venue [dkt 5]. The parties have fully briefed the Motion. The Court finds that the facts and legal arguments pertinent to Defendant's Motion are adequately presented in the parties' papers such that the decision process will not be aided by oral argument. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that Defendant's Motion be resolved on the briefs submitted, without this Court entertaining oral argument. For the reasons that follow, Defendant's Motion is GRANTED, and the Court HEREBY TRANSFERS this matter to the United States District Court for the Central District of California.

## II. BACKGROUND

Plaintiff is an Ohio corporation with its principal place of business in Fostoria, Ohio. Defendant is a California corporation with its principal place of business in Whittier, California. Defendant manufactures a host of products including, but not limited to, crankshafts. Defendant maintains no production facilities, sales offices or any other type of office in Michigan, and it has no customers or vendors in Michigan.

Plaintiff states that on October 30, 2008, Defendant's President, Ryan Brown, sent an email to Equipment Trading Company ("ETC"), a Michigan equipment brokerage firm, inquiring as to whether ETC would be interested in assisting Defendant in selling equipment used in the production of engine crankshafts ("Equipment").[1] The Equipment consisted of: (a) Landis 3L Crankshaft Grinder, (b) Adcole 1200 Crankshaft Inspection Machine, and (c) Theilenhaus Crankshaft Lapping Machine. Prior to receiving Brown's email, ETC had never had any contact with Defendant. After receiving Brown's email, Tim Paul, a broker at ETC, called him to discuss the Equipment. Defendant and ETC ultimately entered into a Sales Agency Agreement whereby Defendant designated ETC as its exclusive agent for arranging a "Private Negotiated Sale" of the Equipment originally described in Brown's email to Paul.

After Defendant signed the Sales Agency Agreement, Paul added the photographs provided in Brown's email to ETC's website to advertise the Equipment. Paul also submitted the photographs to various trade journals and other websites for additional advertising and indicated that ETC would advertise and market the Equipment worldwide. Paul listed the same sale price ($825,000.00) for the Equipment that Brown designated in his initial email. On December 16,

---

[1] According to Defendant, ETC contacted Defendant in November or December 2008, requesting that ETC assist Defendant in selling used equipment located at Defendant's place of business. The pleadings and affidavits submitted on a 12(b)(2) motion, however, are received in a light most favorable to the plaintiff. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

2008, Paul emailed Brown to ask for more detailed information regarding the Equipment, and Brown responded the same day with descriptions of the Equipment that identified the machines and their attachments.

Plaintiff's President, Richard Norton, called Paul to inquire about equipment that ETC had for sale. Paul told Norton about Defendant's Equipment and emailed him Brown's original description from his October email, including the asking prices and photographs of the Equipment. Plaintiff offered to purchase the first two machines for a total price of $350,000.00. After Plaintiff refused to raise its offer, Paul agreed to reduce his commission from 10% to 5%, and Defendant subsequently accepted Plaintiff's offer. On March 13, 2009, Brown emailed Paul photographs of the Equipment being purchased by Plaintiff. These photographs showed the Equipment described in the first and second paragraphs of Brown's October and December emails. The parties then entered into an Equipment Purchase Agreement ("Purchase Agreement") effective March 19, 2009. As memorialized in the Purchase Agreement, Plaintiff paid Defendant the total amount owed (less Paul's 5% commission) via wire transfer. Paul subsequently traveled from Michigan to California on March 15, 2009, to inspect the Equipment being purchased by Plaintiff. During Paul's visit, Brown and Paul viewed and discussed all the components of the Equipment being purchased by Plaintiff. To facilitate the shipment of the Equipment, two of Plaintiff's engineers traveled from Ohio to Defendant's facility on March 30, 2009, to meet with the individuals hired to load and transport the Equipment so that the engineers could determine the best strategy for transporting it.

During the review of the Equipment, Plaintiff alleges that certain attachments ("Detained Equipment") described in Brown's October and December emails were not included with the Equipment. Plaintiff's engineers then called Paul to confirm exactly what Plaintiff purchased

3

from Defendant. Paul sent a photograph, taken during his inspection of the Equipment, to Plaintiff's engineers so that the engineers could account for everything. According to Plaintiff, Defendant removed the Detained Equipment even though it was to be included in the Equipment described in Brown's October and December emails. Brown told Plaintiff's engineers and Paul that the Detained Equipment was not included in the sale.

Plaintiff filed a complaint against Defendant in this Court on April 3, 2009, for Claim and Delivery of the alleged Detained Equipment and Other Relief. On April 29, 2009, Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, to Transfer Venue.

### III. LEGAL STANDARD

Defendant alleges that the Court lacks personal jurisdiction over it, which the Court construes as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). It is well settled that the plaintiff bears the burden of showing that this Court has personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *accord Am. Greeting Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988); *Weller v. Commwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974).

Once a defendant has filed a properly supported motion for dismissal based on a lack of personal jurisdiction, a plaintiff "may not stand on . . . [its] pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction [over defendant]." *Theunissen*, 935 F.2d at 1458 (citing *Weller*, 504 F.2d at 930). Here, Defendant has filed a properly supported motion for dismissal, and both parties have submitted documents in support of their respective positions.

At this stage of the proceedings the Court may decide the motion upon the affidavits

alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions. *Id.* at 1458 (citing *Serras v. First Tenn. Bank Nat'l. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). It is within the Court's discretion to decide which method it will employ in deciding the motion, but "the method selected will affect the burden of proof the plaintiff must bear to avoid dismissal. . . . Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id.* (citations omitted). In addition, "the pleadings and affidavits submitted on a 12(b)(2) motion are received in a light most favorable to the plaintiff." *Id.* at 1459 (citations omitted). "[T]he court disposing of a 12(b)(2) motion . . . [cannot] weigh the controverting assertions of the party seeking dismissal." *Id.* (citations omitted).

The facts of this case are straightforward, and discovery would not alter the Court's decision. As such, the Court will examine the affidavits and pleadings submitted to determine whether Plaintiff has made a prima facie showing that personal jurisdiction exists.

### IV. ANALYSIS

**A. PERSONAL JURISDICTION**

Plaintiff alleges that this Court has personal jurisdiction over Defendant by virtue of Defendant retaining broker services in Michigan. In Paragraphs 4, 5, and 6 of its Complaint, Plaintiff makes the following allegations regarding Defendant's connection with Michigan:

> 4. At some point in 2008 or 2009, Defendant retained [ETC] an equipment broker with its principal place of business in Wixom, Michigan, to sell . . . [Equipment.]
>
> 5. During the course of its retention by Defendant, ETC negotiated the sale of the Equipment to Plaintiff.
>
> 6. As a result of those negotiations, on March 19, 2009, Plaintiff

> and Defendant entered into an Equipment Purchase Agreement ("Agreement") pursuant to which Plaintiff agreed to purchase the Equipment from Defendant for $332,500.00[.]

Defendant argues that its retention of the third-party Michigan broker to facilitate the sale of equipment to Plaintiff does not satisfy the elements of the minimum-contacts doctrine necessary for this Court's exercise of personal jurisdiction.

The Court employs a two-step inquiry when determining whether it may properly exercise personal jurisdiction over Defendant: (1) whether sufficient minimum contacts exist to find jurisdiction under Michigan's long-arm statute, and if such contacts are found, (2) whether the exercise of jurisdiction over Defendant would offend due process.

### 1. *Long-Arm Jurisdiction Under Mich. Comp. Laws § 600.715*

Pursuant to Fed. R. Civ. P. 4(e), the Court first looks to the Michigan long-arm statute, Mich. Comp. Laws § 600.715, to determine whether personal jurisdiction exists in the case at bar. That statute provides that:

> The existence of any of the following relationships between an individual or his agent and the State shall constitute a sufficient basis of jurisdiction to enable a Court of record of this State to exercise limited personal jurisdiction over the individual and to enable the Court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> > (1) The transaction of any business within the State.

In *Sifers v. Horn*, 188 N.W.2d 623 (Mich. 1971), the Michigan Supreme Court stated that the phrase "transaction of any business within the State" in the statute "means just what it says. It includes 'each' and 'every' . . . . It comprehends the 'slightest' contact." *Id*. at 624 n.2. *See also Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 905-06 (6th Cir. 1988); *Electrolines, Inc. v. Prudential Assurance Co., Ltd.*, 677 N.W.2d 874 (Mich. Ct. App. 2003).

6

Defendant's signing of the Sales Agency Agreement with Michigan-based ETC, which ultimately resulted in the Purchase Agreement between Plaintiff and Defendant, satisfies minimum contacts under *Sifers* since the signing of a contract is a business transaction, and *any* business transaction, even the slightest, satisfies jurisdiction under Michigan's long-arm statute. *Id*. at 624. Thus, the Court concludes that the exercise of personal jurisdiction over Defendant is proper under Mich. Comp. Laws § 600.715.

### 2. Due Process

The Court's inquiry does not end with Michigan's long-arm statute because "constitutional concerns of due process limit the application of this state law." *Theunissen*, 935 F.2d at 1459 (citation omitted). A defect in due-process considerations "would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would permit it." *Id.* The relevant due-process criteria (the "*Mohasco* Requirements") are:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). If Plaintiff can satisfy each of the three *Mohasco* Requirements, due process will not be offended.

### a. Purposeful Availment

The Court finds that Defendant did not purposefully avail itself of the privilege of acting in Michigan or causing consequences in Michigan by contracting with ETC to grant ETC the exclusive right to sell the Equipment. Defendant's contract with ETC was not a deliberate

7

undertaking to do or cause an act or thing to be done in Michigan since no information is provided specifying Michigan as the exclusive or even the primary target market for the Equipment. In fact, the Sales Agency Agreement stipulated that the Equipment would be advertised and marketed worldwide, establishing that Defendant's availment of the opportunity of selling the machinery in Michigan was *passive* as opposed to *purposeful*. Further, the Sales Agency Agreement cannot reasonably be regarded as a prime generating cause of the effects resulting in Michigan for the simple reason that there were no alleged effects in Michigan; the effects occurred in Ohio and/or California.

Further, the mere fact that Defendant entered into a contract with a non-party Michigan corporation does not mean that Defendant purposefully availed itself of the "benefits and protections" of Michigan law. As the Supreme Court has noted, "an individual's contract with an out-of-state party alone" cannot "automatically establish minimum contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985); *see also CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) (finding that merely entering into a contract would not, without more, establish sufficient minimum contacts). In this case, the contract was with an out-of-state *non-*party, establishing a situation even less supportive of a finding of minimum contacts than was the case in *Burger King*.

Therefore, the Court concludes that Defendant, simply by contracting with ETC to give ETC the exclusive right to sell the Equipment worldwide, did not purposefully avail itself of the privilege of acting in Michigan and did not cause significant consequences in Michigan. As such, the first *Mohasco* requirement is not satisfied, thereby invalidating the exercise of personal jurisdiction over Defendant.

    *b. Cause of Action Relation to Michigan*

To satisfy the second *Mohasco* requirement, Plaintiff's cause of action must arise from activities directed at Michigan and that have allegedly caused consequences to occur in Michigan. In *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir. 1997), the alleged offer and acceptance between a Michigan plaintiff and an Oklahoma defendant was conducted over the telephone and via facsimile, and purchase orders were sent by the defendant directly to the plaintiff in Michigan. The defendant refused to pay the full purchase price because of an alleged non-conformity with the goods. The court determined that personal jurisdiction was not proper in Michigan because "[t]he purchase agreement between Paragon and Kerry Steel represents nothing more than an isolated transaction, as far as the record discloses. There is no indication in the record that Paragon intended to create an ongoing relationship in Michigan with Kerry Steel." *Id.* at 151.

In this case, when addressing the question of whether Plaintiff's cause of action arose from Defendant's activities in Michigan, the facts are less compelling for a finding of personal jurisdiction than in *Kerry*. Unlike *Kerry*, Plaintiff is not located in Michigan, and the Purchase Agreement between the parties was not executed in Michigan. The *Kerry* court concluded that the plaintiff's cause of action arose elsewhere:

> We are not persuaded that Kerry Steel has shown that its cause of action "arose from the Defendant's activities" in Michigan. At its most basic level, the claim arose out of Paragon's failure to pay the full purchase price, based on the purported non-conformity of the goods with the specifications of the contract. *The refusal to pay occurred in Oklahoma.*

*Id.* at 152 (emphasis added). In this case, the claims arise out of Defendant's alleged failure to provide the paid-for Equipment in accordance with the provisions of the Purchase Agreement between Plaintiff and Defendant. This refusal to provide the Equipment occurred in California, not Michigan. As such, Plaintiff's cause of action does not arise from Defendant's single contact

9

with Michigan (the Sales Agency Agreement); rather, it arises from the Purchase Agreement between Plaintiff and Defendant.

Plaintiff cites to cases holding that a cause of action arises out of a defendant's transactions in the state if they are "made possible by" or arise in the "wake" of the transactions. These cases, however, address the issue of finding personal jurisdiction under Michigan's long-arm statute and not under due-process requirements. The United States Supreme Court relies on a different interpretation of "arise out of" for the purposes of minimum contacts than Michigan Courts have used when determining long-arm jurisdiction. Plaintiff's reliance on these cases is therefore irrelevant when analyzing due-process considerations. Therefore, the Court concludes that Plaintiff's cause of action does not arise from activities of Defendant directed at Michigan, nor does it result in consequences in Michigan. As such, the second requirement of *Mohasco* is not satisfied.

### c. Substantial and Reasonable

The third *Mohasco* requirement mandates that the acts of Defendant and the consequences of those acts have a substantial enough connection with Michigan to make the exercise of jurisdiction over Defendant reasonable. *Mohasco*, 401 F.3d at 381. The only connection between Defendant and Michigan is the retention of a business broker. This fact alone is insufficient to supply a "substantial enough connection" with the forum state. *Id.* To subject a California defendant to suit in Michigan simply because a third-party served as the intermediary between Defendant and Plaintiff would be far from reasonable. *See Kerry*, 106 F.3d at 152 (holding that "it is inconceivable that the Court which decided *International Shoe* would consider it reasonable for a Michigan Court to exercise jurisdiction over Defendant" on the basis of a contract signed between the parties when the contract was not a prime generating

cause of the action.)  In this case, a contract between Defendant and a third-party (ETC) is not a reasonable basis upon which to exercise jurisdiction.

Therefore, the Court finds that Defendant's Sales Agency Agreement with ETC is not sufficient to satisfy the "substantial contact" requirement of *Mohasco*.  Since Plaintiff failed to satisfy any of the three *Mohasco* requirements, the Court finds that it does not have personal jurisdiction over Defendant.  It remains to be considered whether dismissal or transfer is the appropriate remedy.

### B. TRANSFER

A federal case may be transferred to another federal court when venue or jurisdiction is improper in the court selected by the plaintiff and the defendant properly objects.  28 U.S.C. § 1406(a).  Although § 1406(a) only mentions transfer when venue is improper, the Supreme Court held that the statute authorizes transfer when jurisdiction is improper.  *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).

Proper venue is determined by 28 U.S.C. § 1391(a), which states, in pertinent part, that:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in:
>
> * * * *
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]

Applying this standard to this case yields the conclusion that the proper venue is the United States District Court for the Central District of California.  A substantial part of the events or omissions giving rise to the claim occurred in California, where Plaintiff alleges Defendant refused to provide the Detained Equipment.  The property that is the subject of the action is

11

situated in California, since the Detained Equipment remains in Defendant's place of business in Whittier, California. Therefore, in the interests of justice, and pursuant to 28 U.S.C. § 1406(a), the Court elects to transfer this case to the United States District Court for the Central District of California.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, Defendant's Motion to Transfer Venue is GRANTED.

This matter is HEREBY TRANSFERRED to the United States District Court for the Central District of California.

IT IS SO ORDERED.

Date: July 29, 2009

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE